CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
SEP 24 2012
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| MICHAEL MIX, | ) | CASE NO. 4:12CV00003 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | By: B. Waugh Crigler |
| Defendant. | ) | U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's April 23, 2010 protectively-filed applications for a period of disability and disability insurance benefits and supplemental security income under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416, 423, and 1381, et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this action from the docket of the court.

In a decision dated August 24, 2011, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since September 1, 2009, his alleged date of disability onset.[1] (R. 12.) The Law Judge determined plaintiff's knee difficulty status

---

[1] Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last

1

with post surgical intervention and left shoulder difficulty status post-rotator cuff repair were severe impairments. (R. 12-13.) He also concluded that, through the date of the hearing, plaintiff did not suffer an impairment or combination of impairments which met or equaled a listed impairment. (R. 13.) Further, the Law Judge found that plaintiff possessed the residual functional capacity ("RFC") to perform a range of light work, with the limitations that plaintiff must avoid overhead reaching and cannot climb ladders, ropes, or scaffolds.[2] (R. 13-16.)

The Law Judge relied on portions of the testimony of Asheley Wells, a vocational expert ("VE"), which was in response to questions premised on the Law Judge's RFC finding. (R. 17-18, 35-42.) Based on this testimony, the Law Judge determined that plaintiff was unable to perform any of his past relevant work. (R. 16.) However, the Law Judge determined that jobs did exist in significant numbers in the national economy which plaintiff could perform, including work as an usher, gate guard, and surveillance monitor. (R. 17.) Accordingly, the Law Judge found that plaintiff was not disabled.

Plaintiff appealed the Law Judge's August 24, 2011 decision to the Appeals Council. (R. 1-5.) In its November 15, 2011 decision, the Appeals Council found no basis to review the Law Judge's decision. (R. 1-2.) The Appeals Council denied review and adopted the Law Judge's decision as the final decision of the Commissioner. *Id.* This action ensued and briefs were filed.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant.

---

for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). In order to qualify for a period of disability and disability insurance benefits, plaintiff must establish that he became disabled prior to the expiration of his insured status, which is December 31, 2014. *See* 20 C.F.R. § 404.131(a); (R. 10, 12, 173, 191.)

[2] Light work is defined in 20 C.F.R. § 404.1567(b) as involving lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in this category requires a good deal of walking or standing, or when it involves sitting most of the time, some pushing and pulling of arm or leg controls.

2

Case 4:12-cv-00003-JLK-BWC   Document 17   Filed 09/24/12   Page 2 of 10   Pageid#: 508

*Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Id.* at 642. When the Appeals Council considers additional evidence offered for the first time on administrative appeal and denies review, courts must consider the record as a whole, including the new evidence, in determining whether the Law Judge's decision is supported by substantial evidence. *Meyers v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011); *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991).

Plaintiff argues that the opinions of William C. MacCarty III, M.D. and Manhal Saleeby, M.D., plaintiff's treating orthopedist and pain management specialist respectively, were entitled to controlling weight. (Dkt. No. 14, at 16-17.) He points out that both were plaintiff's treating physicians, with long relationships with plaintiff and extensive knowledge of his condition and treatment. (Dkt. No. 14, at 17.) He also asserts that the physicians referred to evidence in the record in support of their opinions, including their own examinations, and that their opinions are also supported by the record as a whole. (Dkt. No. 14, at 16-17.) Finally, plaintiff notes that both doctors are specialists in their particular fields. (Dkt. No. 14, at 16-17.) Accordingly, he contends that the Law Judge did not provide a sufficient explanation for discrediting their opinions rendering his findings unsupported by substantial evidence. (Dkt. No. 14, at 17-18.)

3

The opinions of treating sources are entitled to controlling weight, if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence of record. 20 C.F.R. § 416.927(c) (2012); *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). Even if the opinions are found to not be entitled to controlling weight, they are normally given more weight than the opinions of non-treating physicians. *Id.* Moreover, if the treating source is a specialist, his/her opinion is entitled to greater weight than a general physician. 20 C.F.R. § 416.927(c)(5) (2012). The amount of weight given a medical opinion is dependent on several factors: (1) the length of the treatment relationship; (2) the nature and extend of the treatment relationship; (3) the degree of supporting explanations for the opinion; (4) the opinion's consistency with the record; and (5) the specialization of the physician. 20 C.F.R. § 416.927(c)(1)–(6) (2012). Furthermore, a Law Judge must set forth an explanation in the decision why he/she has not given a treating source's opinion controlling weight. 20 C.F.R. § 416.927(c)(2) (2012).

Here, Dr. MacCarty opined that plaintiff suffered chronic pain syndrome, advanced degenerative arthritis, and rotator cuff disease, and could sit two hours in an eight-hour workday, could stand and walk less than two hours in an eight-hour workday, and could lift less than ten pounds occasionally, among other limitations. (R. 431-432.) Dr. Saleeby opined that plaintiff suffered a rotator cuff tear, chronic knee pain from meniscal tears, and fibromyalgia. (R 433.) He opined that plaintiff could sit less than two hours in an eight-hour workday, stand and walk less than two hours in an eight-hour workday, and could lift ten pounds occasionally and less than ten pounds frequently, among other limitations. (R. 435-438.)

The Law Judge found that the opinions were inadequately supported and inconsistent with the record, concluding that the specified limitations were "far too extreme, given the

4

evidence of record," (R. 16.) He pointed out that Dr. MacCarty had observed just a month earlier than his opinion that plaintiff was "doing pretty good," walking well, and not using any kind of walking device. *Id.* The Law Judge also pointed out that Dr. Saleeby had observed that plaintiff had a normal gait, normal mood, appropriate affect, normal range of motion in her knees, normal gait, limited range of motion in the shoulders only over 90 degrees, minimal tenderness to pressure in the lumbar spinal areas, and no motor, sensory, or reflex deficits in her spine. *Id.*

At the same time, the Law Judge considered the November 2010 opinion of Wyatt S. Beazley, III, a state agency consultant. Beazley opined that plaintiff could engage in light work involving no ladder, rope, or scaffold climbing among other postural limitations; and limited overhead reaching bilaterally. (R. 15, 193-203.) The Law Judge found that, even though Beazley was neither an examining or treating physician, his opinion was consistent with the evidence of record and, so, entitled to considerable weight. (R. 15.) The Law Judge also considered the July 22, 2010 opinion of Martin Cader, M.D., another state agency medical consultant. (R. 15.) Like Beazley, Dr. Cader opined that plaintiff could engage in light work[3] involving no ladder, rope, or scaffold climbing and other postural limitations; and limited overhead reaching bilaterally, but he added the additional limitation that plaintiff was limited in reaching in front and laterally. (R. 15, 175-183.) The Law Judge found that because Dr. Cader did not specify the extent of any limitation and had a less complete record before him, his opinion was entitled to less weight.[4] (R. 15.)

---

[3] Specifically, Dr. Cader opined plaintiff possessed the RFC necessary to perform light work from March 1, 2010 through March 1, 2011. (R. 179.) He also opined that plaintiff possessed the RFC necessary to perform medium work with no limitations from September 1, 2009 through February 28, 2010. (R. 181-182.)

[4] The Law Judge was mistaken on this point. Dr. Cader noted that plaintiff's impairments, "may limit him to occasional reaching activities." (R. 180-181.) This error does

5

It is clear from the record that plaintiff suffers severe impairments, in the sense they are impairments having more than minimal effects on his work-related activities. Plaintiff has experienced meniscal tears in both knees and rotator cuff tears in both shoulders. (R. 233, 251, 349, 369, 405-406.) He had surgery to correct tears in his right knee on February 2, 2007, his left knee on April 25, 2008, his right shoulder on April 20, 2010, and his left shoulder on November 26, 2010. (R. 302-303, 291-293, 360-361, 408-409.) Treatment reports also document that plaintiff has been diagnosed with chronic pain syndrome, and he reported consistent and intense pain. (R. 335-336, 339-340, 342-343, 374-377.) However, plaintiff's treating doctors have noted that his pain was reduced by medication, hyalgan injections, and suprascapular nerve blocks. (R. 374, 375, 377, 399, 413, 420.) On March 12, 2010, Dr. Saleeby noted that plaintiff maintained a reasonable quality of life while on medication, and on April 5, 2011, Tenielle R. Holste, PA-C, noted that he was able to get around quite well in spite of his pain. (R. 377, 420.) On May 19, 2010, Dr. Saleeby noted, "Medications are making his pain tolerable." (R. 374.) Moreover, plaintiff's knees have been shown generally to be within normal limits on physical examination: namely, normal range of motion with occasional tenderness in his knees, normal gait with no difficulty standing or walking, and no limitations in motor strength or reflexes. (R. 333, 336, 340, 343, 347, 374, 375, 377, 387, 397, 399, 415, 417, 418, 420, 421.)

Portions of Dr. Saleeby's opinion, in particular, are inconsistent with the record. Dr. Saleeby opined that plaintiff had been diagnosed with fibromyalgia. (R. 433.) However, there is no prior diagnosis of fibromyalgia by either Dr. Saleeby or any other treating physician. Dr. Saleeby himself noted on March 12, 2010 that plaintiff did not meet the criteria for fibromyalgia

---

not undermine the Law Judge's findings as the VE testified that occasional limitations in reaching activities, specifically in front and laterally, would not significantly limit plaintiff's ability to find work. (R. 41-42.)

syndrome. (R. 377.) He also opined that plaintiff required the occasional use of a cane or other assistive device. (R. 437.) Again, there is no evidence that plaintiff ambulated with difficulty, actively used a cane, or had been prescribed one. (R. 333, 336, 340, 343, 374, 375, 377, 387, 397, 399, 415, 417, 418, 421.) Moreover, Dr. MacCarty opined only that plaintiff "probably" would require the use of a cane in the future. (R. 432.)

Finally, Dr. Saleeby opined that plaintiff could use his hands and fingers for repetitive tasks only 40% of the workday. (R. 437.) Plaintiff's treatment records reveal that he has suffered from chronic hand pain and numbness since sustaining an electrocution injury in May 2005. (R. 260, 343, 417.) However, plaintiff has rarely sought any treatment for this condition after October 2005. (R. 255-260.) Only a handful of treatment notes refer to any pain or tenderness in plaintiff's wrists or hands upon examination, and none note any restriction in range of motion, strength, sensation, or reflexes. (R. 343, 377, 417.) Furthermore, an MRI, a Tinel's test, and a Phalen's test have all produced normal findings. (R. 259, 417.)

Plaintiff's daily activities also provide substantial evidence to support a finding that he is not as limited as he claims. Plaintiff testified that, "I drive an Amish friend around, and he helps me pay my bills." (R. 28.) Treatment notes also appear to indicate that plaintiff continued to work past his disability onset date. Dr. Saleeby noted on April 19, 2010, "The medicines are helping. He continues to work." (R. 375.) On March 22, 2010, Dr. MacCarty reported some six months after the alleged onset date, "The patient is a contractor and does heavy labor." (R. 383.) Plaintiff has also continued to work on his farm. (R. 165-166, 410, 428.) Notably, it was his farm work that led to his injuries on October 26, 2010, when plaintiff fell off his barn and severely tore his left shoulder rotator cup. (R. 405, 410, 428.)

7

It is true that the reports by the treating physicians concerning the effects of plaintiff's shoulder injury are more consistent with the record. The record shows that plaintiff has limited range of motion and tenderness in both shoulders and twice has had surgery to correct rotator cuff tears. (R. 343, 349, 350, 360, 369, 374-377, 399, 408-411, 415.) Notably, plaintiff's October 26, 2010 injury and November 26, 2010 surgery, as well as plaintiff's following treatment, were not considered by Beazley, the state agency expert upon whom the Law Judge relied. (R. 197-198, 405, 407-411, 428.) On October 27, 2010, plaintiff reported tenderness and "essentially nil range of motion actively of the left shoulder." (R. 428.) On November 8, 2011, plaintiff reported that he could not lift his left shoulder, and x-rays and an MRI showed that plaintiff had suffered a near complete tear of his left shoulder rotator cuff. (R. 408-411, 427.) On November 26, 2010, surgery on his left shoulder corrected the damage (R. 407-409.), though he was reported to be "hurting like hell" in the days following. (R. 424.) On December 8, 2010, plaintiff was reported to be doing quite well and feeling better, with "quite excellent" passive range of motion in his left shoulder. (R. 423.) On February 9, 2011, plaintiff had fairly good motion in his left shoulder and improving strength. (R. 422.)

Similarly, Dr. Saleeby noted on December 15, 2010 and January 14, 2011 that plaintiff had a great deal of pain and tenderness on passive and active motion in his shoulders, though he also reported good muscle strength and no joint swelling. (R. 417-418.) On February 18, 2011, Dr. Saleeby found that plaintiff had limited range of motion with tenderness over 90 degrees in both shoulders. (R. 415.) While not considered by the state review physicians, the Law Judge did consider this evidence, along with all the other evidence in the record, in arriving at his decision. (R. 15.)

8

Based on the undersigned's close examination of the record, the Law Judge's findings regarding plaintiff's shoulder impairments are supported by substantial evidence. The Law Judge limited plaintiff to no overhead reaching and postural limitations, which certainly was in line with the medical record which limited plaintiff's range of motion above 90 degrees. (R. 13.) Moreover, the VE testified that even if plaintiff was restricted to sedentary labor and was not capable of reaching, there still were jobs available to him. (R. 17, 40-42.) In the end, the Law Judge has authority to resolve conflicts or inconsistencies in the record, and the undersigned will not undertake to re-weigh conflicting evidence, make independent credibility determinations, or substitute the court's judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). While the undersigned might have decided this case differently based on, among other things, plaintiff's shoulder pain and limitations produced by his severe knee impairment, there is substantial evidence supporting the Law Judge's determination of the weight to be given the evidence, and, as a result, his finding that plaintiff was not disabled.

For all these reasons, it is RECOMMENDED that an Order enter GRANTING the Commissioner's motion for summary judgment, DENYING plaintiff's motion for summary judgment and motion to remand, and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the

undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

9/24/12
Date